Josephine CARD, Alfreda Burbridge, Gail Griffin, Westside Mothers Welfare Rights Organizations, on behalf of its members, and all plaintiffs, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

John T. DEMPSEY, Individually and in his official capacity as Director, Michigan Department of Social Services, Defendant.

Civ. A. No. 7–70131.

United States District Court, E. D. Michigan, S. D.

Feb. 16, 1978.

---

Michigan Legal Services by William Burnham, Kenneth Lee Lewis, Detroit, Mich., for plaintiffs.

Frank J. Kelley, Atty. Gen., State of Michigan by Robert N. Rosenberg, Asst. Atty. Gen., Lansing, Mich., for defendant.

## OPINION

FEIKENS, District Judge.

Plaintiffs in this action under 42 U.S.C. § 1983 claim that defendant and his agents violated their rights under the United States Constitution, the federal Food Stamp Act (7 U.S.C. § 2011 *et seq.*) and United States Department of Agriculture regulations by arbitrarily imposing a 90-day limit on retroactive food stamp benefits following an administrative hearing. On July 29, 1977, I approved a voluntary settlement in the form of a Final Consent Judgment which certified a class and gave plaintiffs substantially all of the relief prayed for. They were represented in this case and in related state court matters by Michigan Legal Services, a federally funded Legal Services Organization (LSO), and grantee under the Legal Services Corporation Act of 1974, 42 U.S.C. § 2996 *et seq.* They now move for the awarding of attorneys' fees against the State of Michigan for the work done in this court, citing The Civil Rights Attorney's Fees Awards Act of 1976 (CRA-FAA), Pub.L. 94–559, amending 42 U.S.C. § 1988. The State opposes this motion

claiming that the Eleventh Amendment bars such an award against it and that, in any event, the nature of the proceedings in this court and the method of funding of the legal service provider makes such an award unreasonable in this case. For the reasons given below, the motion is granted, and the amount of $3,423.25 is awarded as attorneys' fees.

## I. THE ELEVENTH AMENDMENT CONTENTION

The traditional American rule has been opposed to the award of attorney's fees in most cases, and the Eleventh Amendment has been held to prohibit the awarding of damages against an unconsenting state or against state officials acting in their official capacity. In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the United States Supreme Court held that only Congress had the power to redistribute litigation costs in a manner contrary to the traditional rule. The Court left it to Congress to determine which statutes embodied public policies important enough to justify an award of attorney's fees under the "private attorney general theory."[1] In October of 1976, the CRAFAA was signed into law and codified in 42 U.S.C. § 1988. It authorized the award of attorney's fees in certain cases where no specific congressional authorization previously existed. It provides:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

---

1. *See, Note,* "Attorney Fee Awards and the Public Interest Litigant," 65 Ky. L. Journal 562 (1976).

944

An extensive discussion of the CRAFAA, its legislative history, and its relation to recent United States Supreme Court decisions is found in *Gates v. Collier,* 559 F.2d 241 (5th Cir. 1977) and *Miller v. Carson,* 563 F.2d 741 (5th Cir. 1977). It is beyond question that the instant § 1983 action now falls outside the traditional rule against the award of attorney's fees to successful litigants.

The question remains whether the Eleventh Amendment bars such an award against the State of Michigan. The United States Court of Appeals for the Sixth Circuit has not passed on the question of attorney's fees in a civil rights case since the enactment of the CRAFAA. However, in *Seals v. Quarterly Court,* 562 F.2d 390 (6th Cir. 1977) it did grant attorneys' fees in a voting rights case in which the plaintiffs had attacked an at large voting plan as violative of their federal constitutional rights and their rights under state law and prevailed on their state law claim. The court said that the Voting Rights Act and the CRAFAA should be liberally construed in regard to the award of attorneys' fees to achieve public purposes involved in their enactment. The court went on to note that:

> Defendants' argument that the Eleventh Amendment bars an award of attorneys' fees against the county has, of course, been disposed of by the Supreme Court in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). See *Rainey v. Jackson State College,* 551 F.2d 672, 675 (5th Cir. 1977).

In *Fitzpatrick* the Supreme Court held that the Eleventh Amendment does not bar all awards against states, since that Amendment and the principle of state sovereignty that it embodies are limited by the enforcement provisions of § 5 of the Fourteenth Amendment, which grants Congress authority to enforce "by appropriate legislation" the substantive provisions of the Amendment, which themselves embody significant limitations on state authority. The Court went on to say that the same rule applies to the award of attorneys' fees where there is express congressional authorization for such an award. In *Rainey v. Jackson State College,* cited approvingly by the Sixth Circuit in *Seals,* the Court held that the combination of the CRAFAA and the *Fitzpatrick* decision establishes that the Eleventh Amendment is no longer a bar to the award of attorneys' fees against a state in actions under the statutes enumerated in the Act. This reasoning is sound and consistent with the decision in *Seals.* Consequently, the Eleventh Amendment is not a bar to the award of attorneys' fees against the State of Michigan in this § 1983 action. See also, *Finney v. Hutto,* 548 F.2d 740 (8th Cir. 1977); *Stanford Daily v. Zurcher,* 550 F.2d 464 (9th Cir. 1977); and *Verrilli v. City of Concord,* 557 F.2d 664 (9th Cir. 1977).

## II. AWARD OF ATTORNEYS' FEES TO A PUBLICLY–FUNDED LEGAL SERVICE ORGANIZATION

The State maintains that even if the Eleventh Amendment is no longer a bar to the award of attorneys' fees against it, an award would be improper in this case. It argues that such an award will not actually benefit the plaintiffs and is unnecessary because public funding provides sufficient incentive for LSOs to bring suits to vindicate civil rights. Neither of these rationales is persuasive. It appears that from the beginning of its involvement in the funding of legal services, Congress has intended that LSOs be eligible for attorneys' fee awards on the same basis as private attorneys. In *Alyeska, supra,* the Supreme Court observed that:

> [R]emarks made during debates on this legislation [Legal Services Corporation Act] indicate that there was no intent to restrict the plaintiff's recovery of attorneys' fees in actions commenced by the Corporation or its recipient where under the circumstances other plaintiffs would be awarded such fees. 421 U.S. 240, 262–263, n. 36, 95 S.Ct. 1612, 1624.

The regulations under the Legal Services Corporation Act and the accompanying commentary carry out the congressional intent by giving the rationale for such award

and establishing appropriate procedures. 41 Fed.Reg. 38,506 (1974) and 45 C.F.R. 1609.5(a), respectively.

The legislative history of the CRAFAA contains recognition that LSOs would be eligible for fee awards on the same basis as private counsel. The House Report states:

Similarly, a prevailing party is entitled to counsel fees even if represented by an organization or if the party itself is an organization. H.R.Rep. No. 94–1558, 94th Cong., 2d Sess., n. 16.

The Report cites three cases in support of this proposition. The first is the pre-*Alyeska* case of *Incarcerated Men of Allen County Jail v. Fair*, 507 F.2d 281 (6th Cir. 1974) in which the court stated:

The fact that Appellees' counsel was a legal services organization, partially supported by public funds, is irrelevant in determining whether an award is proper. Legal services organizations do not have unlimited resources to devote to the public interest and must confine their representation of indigents to the boundaries of their budgets. An attorney fees' award serves its purpose—to prevent worthy claimants from being silenced or stifled because of a lack of legal resources—whether it goes to private or "public" counsel. *Id.* at 286.

The second case cited is *Torres v. Sachs*, 69 F.R.D. 343 (S.D.N.Y.1975) in which attorneys' fees were awarded under 42 U.S.C. 1973*l*(e) to the Puerto Rican Legal Defense Fund. In the third case, *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974), the court dealt with a civil rights suit involving reapportionment and stated:

Whether the attorney charges a fee or has an agreement that the organization that employs him will receive any awarded attorney's fees are not bases on which to deny or limit attorneys' fees or expenses.

*Incarcerated Men of Allen County Jail v. Fair, supra,* is determinative of the policy issues in this circuit. Congress intended to and did authorize the award of attorney's fees to LSOs both in the enactment of the Legal Services Corporation Act of 1974 and in the CRAFAA, and the fact that plaintiffs were represented by an LSO in this case does not preclude the award of attorneys' fees. *See also, Brandenburger v. Thompson,* 494 F.2d 885 (9th Cir. 1974); *Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534 (5th Cir. 1974); *Note,* "Awards of Attorney's Fees to Legal Aid Offices," 87 Harv.L.Rev. 411 (1973).

## III. THE STANDARD OF DISCRETION FOR AWARDING ATTORNEY'S FEES

Cases arising under statutes similar to the CRAFAA articulate the appropriate standard for the awarding of fees. In *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) the United States Supreme Court construed language in 42 U.S.C. § 2000a–3 very similar to that of the CRAFAA and concluded that one who succeeded in obtaining an injunction under Title II of the Civil Rights Act of 1964 "should ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust." 490 U.S. at 401, 88 S.Ct. at 966. This standard was carried forward in *Northcross v. Board of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973).

*Alyeska* made the standard of discretion a matter for Congress, and the Senate Report on the CRAFAA states:

It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce rights protected by the Statutes covered by S.2278, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (quoting *Newman*) S.Rep. No. 94–1011, 94th Cong., 2d Sess. (1976), U.S. Code Cong. & Admin. News, pp. 5908 *et seq.,* 5912.

In *Brown v. Culpepper,* 559 F.2d 275 (5th Cir. 1977) the Fifth Circuit has held that this standard is indeed applicable to the CRAFAA.

■ There are no special circumstances in this case that would render an award of

attorneys' fees unjust. Plaintiffs have vindicated certain rights of a class of persons who were being denied those rights by defendant and his agents. In spite of state court decisions awarding full retroactive food stamp benefits to other plaintiffs represented by Michigan Legal Services, defendant failed to settle the matter short of litigation in this court. This is an appropriate case for the award of attorneys' fees, and the motion for such an award is granted.

## IV. THE AMOUNT OF THE AWARD

■ The extensive affidavits attached to the motion list the qualifications and experience of the attorneys who worked on the case here. They go on to list the number of hours spent on each and every aspect of the proceedings as well as justifying the rate proposed to be charged for each person's services. The starting point for determining a reasonable fee is the simple mathematical exercise of multiplying attorneys' hours by the typical rate for the type of work. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *Oliver v. Kalamazoo Board of Education*, 73 F.R.D. 30, 41–44 (1976). In *Singer v. Mahoning County Board of Mental Retardation*, 519 F.2d 748 (6th Cir. 1975) the court interpreted the Title VII reasonable attorneys' fees provisions "to require the district court to award a fee that would approximate the customary fee in the community for similar work." Subjective factors may be used to increase or decrease the amount arrived at. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Plaintiffs have not sought to apply any multiplier to the basic amount and have been careful to exclude time spent traveling and time spent on the related state court matters.

■ The State of Michigan does not contest the fact that plaintiffs' attorneys spent at least 108 hours on this case. The rates arrived at by contacting local law firms are reasonable, and the total amount requested, $3,423.25, is also reasonable. Consequently, plaintiffs' motion for the award of attorneys' fees is granted in the amount of $3,423.25. An appropriate order should be presented for entry.